IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Kimberly Y. Jarvis,                       :        Case No. 5:10-CV-2119

        Plaintiff,                    :

        v.                            :        **MEMORANDUM DECISION AND ORDER**

Commissioner of Social Security,          :

        Defendant.                    :


Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' Briefs on the Merits and Plaintiff's Reply (Docket Nos. 14, 19, & 20). For the reasons that follow, the Commissioner's decision is affirmed.

### I. PROCEDURAL BACKGROUND

On April 26, 2007, Plaintiff completed applications for DIB and SSI alleging that she became unable to work because of her disabling condition which commenced on July 27, 2006 (Docket No. 12,

Exhibit 7, pp. 2-6, 8-9 of 28). The applications were denied initially and upon reconsideration (Docket No. 12, Exhibit 5, pp. 11-13, 15-17, 18-20, 22-24 of 26).

Plaintiff filed a request for hearing on February 8, 2008 (Docket No. 12, Exhibit 5, pp. 25-26 of 26). On November 17, 2009, a video hearing was held at which Plaintiff, represented by counsel and Bruce Holderead, a Vocational Expert (VE), appeared before Administrative Law Judge (ALJ) Priscilla M. Rae at Falls Church, Virginia. ALJ Rae entered a decision on November 25, 2009, and determined that Plaintiff was not under a disability as defined under the Act (Docket No. 12, Exhibit 2, pp. 16-23 of 49).

On July 30, 2010, an Appeals Officer from the Office of Disability Adjudication and Review denied Plaintiff's request for review, finding no reason under the rules to review the ALJ's decision. The ALJ's decision was rendered the final decision of the Commissioner of Social Security in this case. (Docket No. 12, Exhibit 2, p. 2-4 of 49).

## II. FACTUAL BACKGROUND

*1.  Plaintiff's Testimony*

On November 17, 2009, Plaintiff was 25 years of age. Her height was 4'11" and her weight was approximately 97 pounds (Docket No. 12, Exhibit 2, p. 31 of 49; Exhibit 11, p. 4 of 42).

Plaintiff was awarded a special education twelfth grade certificate. After high school, she commenced the study of veterinary science. She did not complete the course of study that would qualify her for a position as a veterinarian's assistant as she could not pay for the books (Docket No. 12, Exhibit 2, pp. 31-33 of 49).

Plaintiff obtained work at the Animal Protective League (APL) as a dishwasher. Plaintiff quit her job at the APL because no one would train her to work with the animals. Now she cannot work

because she is plagued with chronic fatigue, memory loss and lower back problems (Docket No. 12, Exhibit 2, pp. 33- 34, 36 of 49). In fact, Plaintiff claims that because of lower back pain, she cannot perform any work on a full-time basis that includes standing (Docket No. 12, Exhibit 2, p. 35 of 49).

Although Plaintiff had a problem concentrating, she generally watched entire television programs and movies. The onset of fatigue interfered with her ability to concentrate on television (Docket No. 12, Exhibit 2, p. 37 of 49).

2.  *The VE's Testimony*

The ALJ classified a hypothetical plaintiff as a younger individual with a special education twelfth grade certificate level of education. The VE responded that this individual could execute, remember, understand and carry out only single instructions and there would be a limited number of jobs that he or she could perform. If the jobs were limited to one-two step tasks and a level of specific vocational preparation (SVP) that included a short demonstration only, the hypothetical plaintiff could perform the following work:

| JOB | DICTIONARY OF OCCUPATIONAL TITLES REFERENCE | SVP | NUMBER OF JOBS IN THE NATIONAL ECONOMY |
|---|---|---|---|
| STREET CLEANER | 955.687-018 | SHORT DEMONSTRATION | 15,000 |
| MACHINE FEEDER | 715.686-014 | SHORT DEMONSTRATION | 12,000 |
| CLEANER II | 919.687-014 | SHORT DEMONSTRATION | 250,000 |

The ability to read at a third grade level and do math at a fourth grade level would not preclude any of the work listed above because the language and math levels required to perform the jobs of street cleaner, machine feeder and cleaner jobs were compatible with first through third grade levels of comprehension. However, if the hypothetical plaintiff had difficulty maintaining attention and

3

concentration and would be off-task for ten minutes in an hour, there would be no jobs that he or she could perform (Docket No. 12, Exhibit 2, pp. 37-39 of 49).

If the need to sit and/or stand was included in the hypothetical, the jobs of street cleaner, machine feeder and cleaner would be eliminated from the pool of work that the hypothetical plaintiff could perform.  It would be unacceptable behavior if the hypothetical plaintiff missed more than three days in a month (Docket No. 12, Exhibit 2, p. 39-40 of 49).

### III. MEDICAL EVIDENCE

On January 8, 2001, Dr. K. Scott Pacer, M. D., a psychiatrist, conducted a study of Plaintiff's mental disorders at the behest of the Department of Human Services.  Dr. Pacer diagnosed Plaintiff with major depression and "R/O post traumatic stress disorder."  He subjectively rated Plaintiff's social, occupational and psychological functioning and gave her a score that denoted serious symptoms (Docket No. 12, Exhibit 12, p. 16 of 34; www.vitals.com/doctors/Dr_Kenneth_Pacer.html).

On December 17, 2005, Dr. Michael Baumgardner, D.O., an emergency room physician, diagnosed Plaintiff with acute undifferentiated abdominal pain, etiology uncertain (Docket No. 12, Exhibit 10, pp. 5-6 of 32).  The supporting clinical examination showed a large amount of air scattered throughout the small intestine and colon and borderline distention of the small bowel loops.  Bilateral spondylosis (degenerative osteoarthritis) was observed at L5 of the lumbar vertebrae (Docket No. 12, Exhibit 10, pp. 7, 8 of 32; www.vitals.com/doctors/Dr_Michael_Baumgardner.html).

On November 30, 2006, Dr. Richard Litwin, Ph. D., a licensed clinical psychologist, conducted an evaluation of Plaintiff's intellectual functions.  The results from the WECHSLER ADULT INTELLIGENCE SCALE 3 (WAIS-III), the WIDE RANGE TEST OF ACHIEVEMENT-3, the GRAY ORAL READING TEST-4, TEST OF WORD READING EFFICIENCY TEST, and the BOSTON NAMING TEST showed, generally, that

Plaintiff had a low aptitude, limited abilities, poor comprehension and limitations in lateral thinking. Specifically, Plaintiff had a full scale intelligence quotient (IQ) of 70; she read words on a third grade level and her math and spelling abilities were on a fourth grade level; her word reading efficiency was on a second grade level; she could identify 32 of 60 words in a confrontation naming test; and she was highly concrete and black and white in her thinking.

Dr. Litwin concluded that Plaintiff had an adjustment disorder with anxiety and depressed mood (mild) and a reading disorder and some mild symptoms or some difficulty in social, occupational, or school functioning. He subjectively rated Plaintiff's ability to function in the borderline to low average ranges; however, Plaintiff's IQ alone would not qualify her for mental retardation/developmental disabilities (Docket No. 12, Exhibit 10, pp. 13-16 of 32).

Following a two-year period during which she stopped taking her medication, Plaintiff presented to Dr. Thomas M. Robb, D. O., a psychiatrist, for treatment of depression. On December 13, 2006, he diagnosed Plaintiff with major depression, recurrent, and questionable past post-traumatic stress disorder. A conservative dosage of Celexa, an antidepressant, was prescribed with instructions to increase the dosage (Docket No. 12, Exhibit 10, p. 29 of 32; www.healthgrades.com/directory.../dr-thomas-robb-do). On January 24, 2007, Dr. Robb determined that there were no side effects of the medication. He subjectively rated Plaintiff's social, occupational, or school functioning as limited by moderate symptoms or moderate difficulties. There were no medication-induced movement disorders (Docket No. 12, Exhibit 10, p. 28 of 32). On April 25, 2007, Dr. Robb reported that the Celexa was effective in treating the symptoms of depression. There were no medication-induced movement disorders and Plaintiff continued to exhibit moderate symptoms or moderate difficulty in social, occupational, or school functioning (Docket No. 12, Exhibit 10, pp. 27-28 of 32).

On July 31, 2007, Dr. Gary Sipps, Ph. D., a clinical psychologist, conducted a clinical interview, during which the WAIS-III and the WECHSLER MEMORY SCALE-III, a test designed to measure different memory functions, were administered by Leon Howard, Ph. D.  Plaintiff's full scale IQ score was 70 (Docket No. 12, Exhibit 11, pp. 3, 7 of 42; www.everydayhealth.com/doctors/dr-gary_j_sipps_phd). Dr. Sipps diagnosed Plaintiff with borderline intellectual functioning, a major depressive disorder, recurrent but in partial remission with treatment and attention-deficit/hyperactivity disorder (ADHD) and moderate symptoms or moderate difficulty in social, occupational, or school functioning.  "When comparing her scores on the WMS-III with predictions based on Plaintiff's WAIS-III performance, Plaintiff's low-average range predicted scores were significantly higher than the borderline range visual immediate memory and deficient range visual delayed memory."  It was Dr. Sipps opinion that Plaintiff's ability to concentrate and attend to tasks appeared to be mildly impaired (Docket No. 12, Exhibit 11, pp. 8-9 of 42).

Dr. Roy Shapiro, Ph. D., a clinical psychologist, evaluated the following mental activity in the context of Plaintiff's capacity to sustain that activity over a normal weekday and workweek on an ongoing basis.  It was his opinion that Plaintiff was moderately limited in her ability to:

- Understand and remember detailed instructions;
- Carry out detailed instructions;
- Maintain attention and concentration for extended periods;
- Complete a normal workday and workweek without interruptions from psychologically based
    symptoms; and
- Respond appropriately to changes in the work setting.

Plaintiff's ability to relate to others and tolerate the stress and pressures of daily work was mildly impaired.  Plaintiff could perform simple, routine tasks which do not require strict time/production demands (Docket No. 12, Exhibit 11, pp. 13-15 of 42).

Dr. Shapiro also found that Plaintiff suffered from a medically determinable impairment that did not precisely satisfy the diagnostic criteria. Namely Plaintiff had a major depressive disorder, in partial remission, and borderline intellectual functioning (Docket No. 12, Exhibit 11, pp. 17-21 of 42). Plaintiff was mildly limited in her ability to perform activities of daily living and in the difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace (Docket No. 12, Exhibit 11, pp. 17 -28 of 42).

Plaintiff reported to Dr. Robb on January 24, April 25, and July 23, 2007, that overall there were minimal episodes of depression, she had difficulty remembering to take her medication and there were no thoughts of suicide or homicide. In effect, she could not identify side effects from Celexa. Dr. Robb opined that on these dates, Plaintiff exhibited moderate symptoms or moderate difficulty in social, occupational, or school functioning (Docket No. 12, Exhibit 12, pp. 11-13 of 34).

On September 11, 2007, Dr. Lisa Schroeder, M. D., a family practitioner, diagnosed Plaintiff with degenerative osteoarthritis with persistent back pain causing decrease in function. As treatment, Dr. Schroeder imposed weight bearing and lifting parameters. She opined that Plaintiff's memory problems were more likely secondary to ADHD and learning disability (Docket No. 12, Exhibit 11, pp. 34 of 42; www.healthgrades.com/physician/dr-lisa-schroeder-xjtdg/).

Also on September 11, 2007, Dr. Dan R. McFarland, M. D., a diagnostic radiologist, found that Plaintiff's first sacral vertebra was not fused with the others, that there was an injury to the pars interarticularis and a group of injuries to the spinal column (Docket No. 12, Exhibit 11, p. 35 of 42; www.avvo.com/doctors/dan-mcfarland-2008255.html). The manual muscle tests showed that Plaintiff's shoulders, elbows, wrists, fingers, hips, knees, feet and great toes could raise against maximal resistance (Docket No. 12, Exhibit 11, p. 36 of 42). The range of motion in Plaintiff's cervical spine, shoulders,

7

elbows, wrists, hands, fingers, hips, knees and ankles was within a normal range (Docket No. 12, Exhibit 11, pp. 37-39 of 42).

On October 17, 2007, Dr. Robb reported that Plaintiff stopped taking Celexa so that she could get pregnant. In its stead, Dr. Robb prescribed Prozac, another medication used to treat depression. Dr. Robb noted the presence of moderate symptoms or moderate difficulty in social, occupational, or school functioning (Docket No. 12, Exhibit 12, p. 10 of 34).

Also, on October 17, 2007, Dr. Steven J. Meyer, Ph. D., conducted a case analysis and determined that there was no substantive change in Plaintiff's psychiatric condition with treatment compliance (Docket No. 12, Exhibit 12, p. 18 of 34).

On November 14, 2007, August 25, December 23, and March 24, 2009, a nurse practitioner from Coleman Professional Services, a nonprofit behavioral health organization providing treatment for mental health, effectuated a program designed to monitor and reduce Plaintiff's mental health symptoms. The nurse found:

- November 14: Plaintiff was compliant with Prozac as ordered, denying any problems or side effects.
- August 25: Plaintiff reported no new stressors, medication issues or side effects. She did, however, have increased anxieties because of attempts to quit smoking.
- December 23: Plaintiff was compliant with her drug therapy; otherwise, she relapsed into a depressive mood.
- March 24: Plaintiff was not compliant with her drug therapy but she slept well.

(Docket No. 12, Exhibit 12, pp. 26, 28-29, 30, 32 of 34; www.coleman-professional.com/).

In the meantime, Plaintiff reported to Dr. Robb on March 19, 2008, that she was doing well on Prozac. There were no side effects or new symptoms of depression. Her speech was clear and logical. There were no loose associations, delusions or suicidal or homicidal ideations. Her concentration and memory were adequate (Docket No. 12, Exhibit 12, p. 24 of 34).

8

### IV.  STANDARD OF DISABILITY.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920).  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively:

First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.*  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not

disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V. THE ALJ'S FINDINGS

Upon review of all evidence including the evidence adduced at the hearing, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since July 27, 2006, the alleged onset date of her disability.

2. Plaintiff had the following severe medical impairment: borderline intellectual functioning. This impairment, however, did not meet or medically equal one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

3. Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels except that she was limited to unskilled work only. The basic mental demands of competitive, remunerative, unskilled work included the abilities (on a sustained basis) to understand, carry out and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations and to deal with changes in a routine work setting under Program Policy Statement SSR 85-15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NON-EXERTIONAL IMPAIRMENTS, 1985 WL 56857 (1985).

4. Plaintiff had no past relevant work.

5. Plaintiff was a younger individual aged 18-44, on the alleged disability date. She had a high school education and was able to communicate in English.

6. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was not disabled whether or not she had transferrable skills.

7. Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

8. Plaintiff was not under a disability as defined in the Act from July 27, 2006, through November 25, 2009, the date of the decision.

(Docket No. 12, Exhibit 2, pp. 16-23 of 49).

## VI. STANDARD OF REVIEW.

The federal district court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision in a civil action. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk*

*v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

### VII. Plaintiff's Positions

Plaintiff contends that the ALJ failed to state valid reasons for failing to find that her back impairment and depression were severe impairments.

Plaintiff also argues that the ALJ failed to articulate a valid reason why her condition did not meet 12.05(C) of the Listing.

### VIII. Defendant's Positions.

Defendant argues that having properly considered the potential limitations posed by Plaintiff's depression and back problems in the residual functional analysis, the ALJ reasonably determined that neither condition significantly limited Plaintiff's ability to perform basic work activities.

Defendant claims that Plaintiff has failed to demonstrate the existence of deficits in adaptive functioning that must be met to satisfy the criteria of Listing 12.05(C).

### IX. Analysis of the Severity of Plaintiff's Impairments.

Plaintiff asserts that even if the back problems and depression do not render her disabled; they should be considered a severe impairment.

Reiterating the standard of review that must be undertaken at Step 2 of the sequential evaluation, the ALJ must consider the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(ii) (Thomson Reuters 2011). To qualify for disability a claimant must have a severe medical impairment.

20 C.F.R. § 404.1520(ii) (Thomson Reuters 2011). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c) (Thomson Reuters 2011). By contrast, an impairment is "not severe" where medical evidence establishes only a slight abnormality or a combination thereof which would have no more than a minimal effect on a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(ii) (Thomson Reuters 2011). Additionally, the ALJ must consider the aggregate effects of the claimant's impairments, including those that even in isolation are not severe. 20 C.F.R. § 404.1523(Thomson Reuters 2011). Finally, an ALJ's conclusion that a claimant does not have a severe impairment or combination of impairments must be supported by substantial evidence. 20 C.F.R. § 404.1523(Thomson Reuters 2011).

In this case, the ALJ considered that Plaintiff alleged that she had been diagnosed with spondylosis, scoliosis and depression. Dr. Schroeder found no obvious evidence of scoliosis. Although Plaintiff had spondylosis with persistent back pain, the functional limitations caused by spondylosis were limited to abstaining from lifting heavy objects that weigh more than twenty-five pounds and from bending or stooping. No medicinal or therapeutic treatment was prescribed (Docket No. 12, Exhibit 11, p. 33 of 42). Furthermore, there was no clinical or diagnostic evidence that the symptoms from spondylosis or scoliosis were so severe that they interfered with Plaintiff's ability to work or perform work functions. Plaintiff failed to show that the spondylosis and/or scoliosis are severe impairments that warrant a finding of disability.

The medical evidence of depression in this case is minimal. As late as March 19, 2008, Plaintiff denied any present signs of depression or that there were new symptoms of depression (Docket No. 12, Exhibit 12, p. 24 of 34). The ALJ reasoned that based on this evidence, Plaintiff's symptoms associated with this depressive disorder were controlled by medication or asymptomatic with treatment.

13

Consequently, the medical evidence supports a finding that Plaintiff's impairment of depression was non-severe. Moreover, there is nothing from which to assess the presence, if any, of the functional consequences of depression.

The Magistrate concludes that the ALJ did not err in failing to consider the depression as a severe impairment since there is no evidence of its severity. Furthermore, the ALJ did not err in failing to consider Plaintiff's allegations of scoliosis and spondylosis as severe impairments. The alleged severity was not supported by objective medical evidence. For these reasons, Plaintiff's first claim lacks merit.

### X. ANALYSIS OF WHETHER PLAINTIFF'S IMPAIRMENT MET OR EQUALED LISTING 12.05(C).

In asserting that the ALJ erred in failing to state a valid reason for concluding that her condition did not meet Listing 12.05, Plaintiff suggests that she met the criteria of Listing 12.05. The Magistrate notes that Plaintiff has the burden of demonstrating that her impairment meets the listing.

Listing 12.05C provides in pertinent part as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; ...

.

*Foster v. Halter*, 279 F.3d 348, 354 -355 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added)). A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder. *Id.* (*citing* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) ("Specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of

the mental disorder contained at the beginning of each listing category."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (holding that a lack of evidence to support the requirements of Listing 1.05(C) provided substantial evidence that the claimant was not disabled).  As the Commissioner has pointed out, recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . " *Id.* (*citing* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) as amended by 65 FED. REG. 50746, 50776 (August 21, 2000) (emphasis added)).

Substantial evidence exists to support the ALJ's conclusion that Plaintiff does not meet the listing for mental retardation.  First, the evidence does not demonstrate or support onset before age 22 of significantly subaverage general intellectual functioning with deficits in adaptive functioning.  In fact, the evidence shows that at age 16, Dr. Pacer noted the slowing down of thought and a reduction of physical movements in Plaintiff (Docket No. 12, Exhibit 12, p. 16 of 34).  At age 22, Dr. Litwin considered Plaintiff low functioning but he did not find that her general intellectual functioning of the severity to meet the standard for mental retardation (Docket 12, Exhibit 20, pp. 13-16 of 32).  This evidence is insufficient to show the presence of a generalized disorder appearing before adulthood.

Second, the evidence does not demonstrate or support onset of significant impairment in cognitive functioning.  Plaintiff was awarded a special education twelfth grade certificate and commenced a post-high school course of study.  There is no evidence of impaired mental functioning before age 22.

The ALJ conducted the review of Plaintiff's mental impairment and its application to Listing 12.05C.  A detailed explanation of why Plaintiff's mental impairment was not compliant with Listing 12.05C was conducted (Docket No. 12, Exhibit 2, p. 19 of 49).  The ALJ articulated a clear and valid reason why Plaintiff's condition did not meet 12.05(C) of the Listing.  Therefore, Plaintiff's second

claim lacks merit.

## XI  CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong<br>United States Magistrate Judge

Date:   October 31, 2011

16